Good morning, Your Honors. If it pleases the Court, my name is Parnell Kirby. I represent the appellant, Dennis Marks. I also have with me here my co-counsel, Mr. Norman Pine. He will be taking the rebuttal portion of our argument, and I'd like to reserve that last five minutes for him. Thank you. You have to keep track of your own time. You understand that? Because we get into questioning, we don't keep track of it, so you may just run him right out of time. I will definitely do that. Everybody keep track of your own time. Very good. May I proceed, Your Honor? Thank you very much. This employment relationship between my client, Mr. Marks, and American Airlines arose in California in 1986. From that time, for 15 years, my client worked with perfect attendance in California for American Airlines. Now, there's no doubt that... Let me tell you what I think I know bothers me, is the fact that he claimed that his residency was in Florida. And for quite a number of years, he had his driver's license there, he voted there, he told the California authorities, the Franchise Tax Board, that he was not a resident of California. I suppose he did do that. I don't know what the personal income tax, state income tax is in Florida, but here it's about 11 percent. There is none. What? There is none. There is none, right? That is correct. So that's like getting a 10 percent pay raise, or at least five. So that's... So why shouldn't he be a stop from now coming back and saying that, you know, I'm a resident of California, and I want this case in the federal court, all that? That was the same concern that the Senator just had. It's like a stump, huh? The reason for that is, first of all, he did pay his California taxes. The supplemental... California non-resident taxes. Part-time. Non-resident slash part-time resident was the name of the form, actually. And on that form, he did say that he lived in California. There was no intention of him trying to hide the fact that somehow he was trying to give a picture of him living in Florida, when, in fact, he was living in California, and the California Franchise Tax Board was notified that he was living in California for a few years. I'm sorry, but you don't file a non-resident, part-time resident form if you don't live in California, if not a resident tax return. I understand that. He's filing, I assume, in Florida at the same time. Claiming he's a resident there, running a business there, keeping his car there for 20 years, license there, his personal license there, voting residence there, and so on. All the things that would tell you, I'm a resident of Florida. So, I don't know how he can come in here now. I'd say he told California he was a resident of California, and now he's a Californian non-resident. You have to pay income tax on California's source income. The issue here is the difference between the domicile and the residency definitions. In this case, American is trying to establish a judicial establishment applied to this issue, and it does not, because the United States Supreme Court, in the Texas versus Florida case, stated that you can have two different residences for tax purposes, and that commonly courts and attorneys and laypeople mix the definitions of domicile and residency and misuse them. In this case, that is what Mr. March is being a victim of, is that people are looking at him as a tax dodger, but, in fact, all he's doing is using his rights under the tax court under the United States Supreme Court properly, and then confusing them with his residency for civil rights under the Fair Employment and Housing Act. Now, we, yes. Mr. Kirby, Mr. Kirby, let me stop you just a minute. Right. What's the standard or review for this judicial estoppel decision by the district court? The district court can impose this by its discretion. So we're really looking, did the district court, based on the facts that my good colleagues have suggested to you, did the district court abuse its discretion? Now, I'm an old district judge. I don't like these Ninth Circuit judges overturning me all the time at their whim. All right? So I'm saying to myself, if I put in front of me all these things that my good colleagues have talked about, about what he's done, what he represented the California Franchise Board, that he conceives the ultimate employment decisions were made in Texas, that he does all of this, and then he tells his accountants when the notice of the Franchise Tax Board came to him, that scared the hell out of me. Now, you remember I'm still a resident of Florida. Now, with all of those facts sitting in there, how can I suggest that the district court abused its discretion? Because the United States Supreme Court said it did. In Texas versus Florida, they said that in order to determine residency, you do not look at the statements that the lay people make about residency and normal asylum. You look at the actual facts that are before the court. Well, if it's an abuse of discretion, then you're saying the law took away the discretion of the court? So it's a legal decision now? No, you're right. You're wrong. I'm sorry. What I'm saying is the discretion has to be based in compliance with the law. Now, the law says that the definition of residency is where someone physically lives and continuously, therefore, lives under the California Government Code 241. Now, where did Mr. Marks physically live? He physically lived in California. He could have told everyone in the world that he believed he was a resident of Mars. And that does not mean that he is a resident of Mars. In fact, where he really lives is California. Now, we have to be very, very careful here because judicial estoppel has certain elements to it. And the very threshold element is whether there is an inconsistent statement that cannot be reconciled. Now, on its surface, it looks like there is an inconsistency. We have Mr. Marks saying he's a Florida resident, and he's saying this on his tax returns. Then he comes into court, hires me, I file a lawsuit, and he's saying he's a California resident for purposes of the Fair Employment and Housing Act. Those two statements are not inconsistent because the courts have already ruled that you can have more than one residence for tax purposes. And in this case, Mr. Marks did. And there is no case that says that you somehow give up your civil rights under California simply because of what you said in a tax form. These two statements are not inconsistent. Let's move to another issue. Yes, Your Honor. Why did the district court abuse its discretion in denying a motion to compel when you'd had the time to have your discovery one time, you'd had your time to have your discovery two times pursuant to its orders, and didn't get the discovery done, and now you want to go and have an additional time to do discovery? Don't you think that's certainly an abuse, a discretionary call, discovery? And didn't you get two times to do the discovery, and you didn't get them done? So the old district judge finally said, you know, I've had it. I've given them two times to meet the discovery deadline, and they didn't make it. I'm not going to give them any more discovery. I understand. Thank you for that point. Actually, what happened is the court gave one continuance on that before I went ahead and filed or served the notices of deposition. Notices of deposition were served over one month before the discovery cutoff, and were noticed three times within that one-month period. The first time noticed, American did not appear because they said that the one person, Carolyn Zekich, who was a California decision-maker, didn't live in Texas. She lived in California. I noticed it a second time. Unfortunately, I made a typographical error and forgot to change the location of the deposition, and instead of putting California, I put another Texas address. They still wouldn't show up. Then I served it a third time, still within the discovery cutoff period for California, and they said that they're just not going to show up at all. So three times, this notice of deposition was served before this discovery cutoff, and American Airlines said it would not appear. Let me ask you this. You got one continuance, right? Yes. And how many days did Judge Snyder give you? Sixty days? I'm sorry, Your Honor. I don't quite remember the length of time. Sixty days? Yes. So you got 60 days to get going on this. But then you waited 30 days, okay? And but then each time, presumably, you had the same problems before you asked for the first continuance. Is that right? The same problems? Well, we're serving these people. You just told us a story about how you had problems serving. Actually, no. Those two people that I was serving that are the subject of this particular motion to compel, that was the first attempt to serve them for deposition. There were other individuals I was flying to Texas for deposing during that time, the 60-day period. So American was making the rule that since everyone that represented the company was in Texas, I'd have to fly out to them. Why did you wait until the last minute each time to go in and ask the judge? You waited until the last day, didn't you? Am I wrong about that? For these particular notices of deposition, yes, but there were several issues in that discovery motion. It wasn't just for these depositions. It was a slew. Well, why wait until the last day? Yes, Your Honor. The time did run out. I did have many depositions to take, and they all had to be taken in Dallas. You see, if you have a problem taking depositions, then what you ought to do is contact the clerk of the court, tell the clerk of the court you're having problems, you'd like to have a conference with the judge about it, and you come in early, and you sit down, and you say, Judge, you know, look, I want to go ahead with this. I need to take some depositions, but these people are very evasive. They're doing everything they can to frustrate me. Yes. Unfortunately, the record doesn't show that, but I am out of time, and I only have a few minutes, well, three minutes left. Well, you didn't answer that question. Why didn't you do that? I did, actually, Your Honor. I made a call while in Texas, early on in the discovery, because of counsel deciding that he did not want to- Who did you call? The magistrate judge, in that case, and that was the proper person to call, and they said that they would not hear the matter, that it should be brought on a motion, and in fact, there was a motion for discovery filed before the one that's at issue here because of this discovery, because we tried to work those problems out, and they continued, and unfortunately, that entire discovery history is not here in the record, but I was trying to re-notice these depositions multiple times before the discovery cutoff. As you can see, I served three different notices. It wasn't as if I was not trying to get this deposition or trying to wait to the last minute, and it was but for a matter of hearing. Why don't we hear from the other side, and your partner can give us a little further. Thank you very much. Thank you for your time. May it please the Court. I'm R.J. Hendricks with Morgan, Lewis & Bonkis on behalf of American Airlines. I want to just reserve the majority of my time to address any particular questions that you have. You don't have to reserve anything. You just watch the clock. Okay. I think that your honors have correctly pointed out the factual underpinnings of the Estoppel argument, and I want to just make sure that it's emphasized that it was not simply a tax issue. It wasn't simply the fact that he wrote to his accountant and said, I'm still a resident. It was also a voting issue. It was also a library card issue in Florida. It was also telling his insurance company that his car was in Florida and that he lived in Florida. There was a whole host of conduct, both inclusive of tax issues as well. We know all that. Okay. So we think that the Court did not abuse its discretion with respect to that particular determination. As to the issue of the motion to compel, again, as to that issue as well, we don't believe the Court abused its discretion. One point is that one of the individuals, Mr. Levine, had been identified by American in its initial disclosures from the outset of the case. So the concept that the plaintiff had only the 60-day window to depose that individual is wrong. They had the complete original discovery period to depose that individual. Then they had a further extension. Which was how long? I think it was at least nine months. At least nine months. That's my recollection of it. So when you add on the additional 60 days, you're looking at roughly 11 months to get this done. And even in that context, that didn't occur. Ms. Zekic was someone that was never even identified on the initial disclosures by any party as having any relevant information. And it came something out of the blue. We do reject the notion that somehow we were inappropriate in any respect with respect to our objections or responses to discovery. Objections are foreseeable. It's a part of the process. We have a right to make objections. As counsel has indicated, there were defects with the notices and the various issues. So we fully complied within the rules. And the Court did not abuse its discretion. It was not required to give a further extension. It had already given one extension. And there was no need to give an additional extension. As I understand it, we're really talking about the judicial estoppel argument based on one fact, really, where the plaintiff lives. But there are several other facts that go into the summary judgment, are there not? Yeah, that's correct. If we got past that particular fact. If, in fact, the plaintiff lived in California, if judicial estoppel were not something we could do, we would not be able to get past that particular argument. We can. I mean, again, I do believe that you're still dealing with this notion of extraterritorial application of the FIHA. And, you know, in that regard, you're dealing with the situation of Mr. Marks working in Texas, him having an apartment in Texas. His supervisors are in Texas. The decisions as conceded by counsel during the oral argument are taking place in Texas. And you still deal with a fundamental constitutional issue as to whether or not the State of California can regulate issues of accommodation in Texas relating to an employee who's working in Texas, whose supervisors are there. This is not a situation where you're dealing with, for example, a flight attendant who really is based out of California, for example, and in the course of doing their job, flies to New York, flies to Texas, flies to some other location, and you might make the argument that, well, even though their job takes them to these other states, they're still a California employee. This is a situation where Mr. Marks is a ticket agent, basically, who works in a call center that solely is involved in Texas. It's solely in Dallas. And if you look at those, quite frankly, undisputed facts, you get into a conclusion that all of the interest is in Texas. And the notion of California or some other state regulating that employment relationship would be constitutionally problematic. But isn't it true that if we set aside now where he lived or where from whence his employment or where he lives to have his employment, we're talking that he's employed in Texas, he performed his duties, if any, in Texas, his supervisor was in Texas, the requests were made in Texas for accommodation in his job, the decision to request him to return to work was made in Texas, the medical information that he submitted is reviewed in Texas, the decisions of the medical staff were made in Texas. In fact, as I read the record, counsel can correct me if I'm wrong, the only decision he says was made in California was the denial of his transfers. I think that is a correct statement of both the record in the larger sense and what they are indicating, with one little exception. This issue about the claim as to where the transfer decision was made, the record does not establish that that was made in California. Well, I understand, but if I'm going to, I'm on summary judgment now, so I'm trying to give the benefit of the doubt to the plaintiff, that's the only thing based on what the plaintiff has said and you've said that has been done in California except his residence, that he claims judicial estoppel should not undermine that claim. That would be correct, and I would also add that on the record when the district court asked counsel about the ultimate employment decisions, what was stated by counsel was no, they're in Texas. Is there anything in this record about negligent infliction of emotional distress on appeal? Well, we have our argument. Our argument is... Well, I'm suggesting, did they ever make an argument? I don't believe that they did. And therefore, that claim is waived, is it not? That would be correct. Let me ask you this. On this judicial estoppel, this is a case where that doctrine is applied to facts that did not occur in this particular... Well, when judicial estoppel is applied, it's usually applied where parties take inconsistent positions and get a ruling in the same lawsuit. Do you follow me? I hear you, Your Honor. Well, do you follow me? I know you hear me. I think that this is not such a case. Well, I think the authorities are clear that that's not necessarily a requirement. It's not necessarily a requirement that the inconsistent representations have to be taken in the same case. I would say that... Well, where's the case that says that? We cite to, I can find that, Your Honor. We cite to cases in the context of the insurance framework. And I will look for those cases now. But we do cite to several cases that speak to that particular issue. The state of Ashman versus CIR, 231, Fed Third, 541. Thank you, Your Honor. So again, in this particular... What does that hold? Well, I believe that's an insurance context case. And it says where someone is obtaining a benefit, even though it's not in a judicial proceeding, that that representation can still be binding upon them in a subsequent proceeding. And I believe we also cite it to some tax cases as well that speak to that particular issue. The fundamental issue of judicial estoppel, it's an equitable doctrine. It's intended to promote fairness. It's intended to avoid, quite frankly, almost deception on the court to a certain extent. Is that the way we decide cases on the basis of fairness? I think... This is a revolutionary concept. You've got the champion of fairness in here. So be careful. I think fairness is an important component here. And a part of the fairness here is an individual who, for years... My fairness may not be your fairness. But the issue of fairness, the issue of fairness here is that for years, Mr. Marks made representations and obtained benefits by eschewing, by avoiding the obligations of residency and citizenship in the State of California, both in terms of just dealing with the higher rate of insurance that a California resident might pay by claiming that his car was based in Florida, by these tax benefits. Wait a minute. Wait a minute. I'll just ask you a specific question. Yeah. So I believe that the authorities do exist, that notwithstanding some other authorities, that judicial estoppel is appropriately applied in this case upon these facts. Well, where should this lawsuit have been filed? He should have filed it in Texas. In Texas? Yeah. He did that in Nevada at one point. He filed a charge in Nevada when he was working in Nevada. You know, he understood that that was important. But here in Texas... How about Florida? What's that? Florida. I believe he should have filed it in Texas. I think he should have filed it at where he was working and where he was living at the time. So what's the law of Texas? Well, the law of Texas, in terms of the accommodation issue, would be more akin to the ADA. And unlike the FIHA, I don't believe that there would be any claim that, quite frankly, that Mr. Marks was even disabled. He was not barred from a particular class of jobs. The evidence that was submitted on the record indicated that he could do the current job that he had. And I don't even think he's disabled. I think under Texas law, under the FIHA, even if disabled, I don't think he's entitled to an accommodation. I'm not conceding that fact. What about that severance package they were going to give him? Did he ever get that? The severance package? I mean, when they first moved down there, wherever it was, Las Vegas and Texas, they said, you can come down there and work, or if you don't want to come down there, we'll give you some money. Right. He elected to go to the different location. He elected to go to a different location. So he didn't get the money. Because he made the choice of the different location. That's correct. That's my understanding. But that offer is not open anymore. Currently, he is retired, and he's receiving retirement benefits. And again, after the company extended the leave for more than 13 months, our position, of course, with respect to the accommodation issue is that after a 13-month leave that was offered by the company, the documentation that he submitted was not indicating that he needed any further accommodation. And on that basis, he was requested to return to work. Okay. All right. Why don't you just, you don't have anything else to say, do you? No. Then you can cede your three minutes to Mr. Pine, huh? Excuse me, Your Honor, how much time do I have? Three minutes. Okay. Well, let's begin with the most important point, perhaps. Counsel just said that where he was working should define whose law governs. The record also shows that he attempted to transfer to California, and that that transfer was denied because of his lack of attendance. And the record shows, or at least for summary judgment purposes, we need to assume that the record shows that his attendance was flawless other than approved leaves. Therefore, the record shows that his denial of the transfer to California was illegal because it was based on having taken the legitimate leaves. And had that not occurred, he would have been working in California. Sorry. And as counsel just conceded, where he works should determine whose law governs. So that's one other way we can get to the result that the summary judgment here was incorrectly granted. Is your negligent infliction of emotional distress claim waived? For purposes of this argument, I don't want to discuss it. We'll waive it because it's much more important to focus on the other things. All right. And it's waived. And if, in fact, we're on a motion for summary judgment now, and we're talking about those the extraterritorial application of the law, and we're looking at all those facts, do you need me to read those again? No. No, I don't, Your Honor. Let me address them. It seems to me that even if without judicial estoppel, we're having a very tough time on a motion for summary judgment, giving you all benefit of the doubt to come out differently than what the district court did. Yeah. Well, let me. I appreciate that. I appreciate your concern and where that's coming from. So let me try to address it. The point is there is no case that they cited or that we know of that says if you vote. The Supreme Court said that with regard to taxes, there's no doubt you can be the resident of more than one state. So throw out the taxes. Likewise, there's no case that's been cited by anybody that says if you vote in a different state, you're not a resident of California for purposes of the FIHA. So the question is you're supposed to look at where the person lives. He never lived in Florida. By 1972, he moved there and never returned. Every weekend when he was in Las Vegas, when he was off on the weekends, he returned to California. When he worked in Texas, he returned to California. The issue of residency is determined by where you live and where you intend for the foreseeable future to live. Every action this man took indicated he wanted to live in California. He did, in fact, live in California whenever he was free to do so. And every weekend, whether working in Nevada or Texas, he returned to California. That's where he maintained the only home he has. He has no home in Florida. He had a temporary apartment that he used in Texas that he would flee every weekend back to California. So when we look at the totality, that's the totality. Well, aren't you really arguing that based on an abuse of discretion decision by the district court, what can I really say? You have facts. He has facts. We have facts that we look at. Your man has said some things that are pretty dangerous to his own position, to his accountant and otherwise. Aren't we really looking at has the district court abused its discretion? No. No, because when you're talking about abuse of discretion, you're talking about judicial estoppel now. I know. Okay. Okay. On judicial estoppel. Okay. That's what you argued for the last five minutes. Right, right. No, I thought I was arguing extraterritoriality, which is de novo. That's the legal question. But on judicial estoppel. I was giving you the residence. And then I was saying, if I give you the residence and stack the facts against you, you still seems to be on summary judgment. Right. I think I've addressed that. The only abuse of discretion we're talking about is the judicial estoppel. Is that correct? And I think that's the threat. Okay. The answer to that is you're right and wrong. It's abuse of discretion with regard to if the other, if the factors, if the threshold factors are met, then the judge has discretion. However, the judge doesn't have discretion to throw the factors out. A critical sine qua non factor is an irreconcilable conflict between the two statements. Here, as we've shown from the U.S. Supreme Court decision, the statement that I am a resident of Florida for tax purposes is not inconsistent with, much less irreconcilably inconsistent with, the statement that I am a resident of California for purposes of the FIHA. And if you don't have that threshold, irreconcilable conflict, you don't even get to begin doing a judicial analysis, a judicial estoppel analysis. And so that's a question of law. That's not an abuse of discretion. I have no other question. Let me ask you, is there another jurisdiction where you could file to press your client's claim? I don't believe so. I mean, counsel himself said, I mean, he said, well, he thinks it should be in Texas when this whole case was based on the fact that all the contacts that Justice Smith, Judge Smith listed were in Florida. So it shows that there's real uncertainty about where else besides California he could be or should be. How about Florida? To be honest, I don't know what the law of Florida is on this and whether he could or couldn't. But the question, he never worked in Florida. We're talking about where do you file an employment discrimination case in the one state where everybody agrees he never worked? But did you know that he had all these connections with Florida when you filed this lawsuit? I wasn't counsel at the time, so I certainly didn't know. But if counsel knew, I don't know. Your answer is no. Yes. Well, I had no, my answer is I was not, I had no way of knowing either way. Yeah. May I? I'm sorry. No. Is there a federal claim he could file? I guess in theory, he might have an ADA claim. Yeah. May I make one other point, though? I think your time is finished. How about Americans with Disabilities Claim? Yeah, that's the ADA. That's the ADA. Oh, yeah, you're right. Can I leave the court with one analogy that I think will be very important? Very quickly. Yes. Okay. Under their theory about where the decision gets made is decisive or crucial, we could have the situation where let's assume, let's impugn bad motives to a defendant and say they have a black or a gay or a woman or somebody that they want to discriminate against who works in California. What they can do is close that person's California job, transfer them to their home base in Texas, let a certain amount of time tick, tick, tick, tick. And then once they feel enough time has ticked, say you're fired. And the person says, I want to sue you under California's anti-discrimination laws. And they say, oh, no, you were working in Texas at the time, and the decisions were made in Texas. Therefore, we're immune. And they get to go like that judicially. I think that should be a real concern in this case. I'm not saying that's what happened here. Yeah. But he says, well, you know, my home is in Los Angeles, and I fly back there every weekend. So I don't know. It's a mess. Well, hopefully the wisdom of this panel will sort out the mess and reverse the summary judgment on this. I appreciate your time. You're forbearance very much. Thank you. All right. Thank you. That matter is submitted.
judges: Pregerson, Hall, Smith